

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed August 23, 2022**

**United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| IN RE | § | |
| | § | |
| HOLLIDAY ROAD BURGERS LLC | § | CASE 22-70053-11 |
| | § | CHAPTER 11 |
| DEBTOR | § | |

<u>ORDER CONFIRMING DEBTOR'S AMENDED PLAN OF REORGANIZATION</u>

CAME ON FOR CONSIDERATION by the Court at the confirmation hearing held on August 18, 2022, the Debtor's Amended Plan of Reorganization Pursuant to 11 U.S.C. § 1190 filed August 15, 2022 ("Plan") filed by Holliday Road Burgers, LLC., Debtor in the above-styled and numbered case. The Plan having been transmitted to all creditors, equity interest holders and parties-in-interest and the Court, having been informed the Amended Plan resolves any objections to the Plan, and after hearing the evidence presented, concludes as follows:

1. At least one Class of impaired creditors has voted to accept the Plan.

2.    The Plan complies with the applicable provisions of Title 11, and the Debtor, as the plan proponent, has complied with the applicable provisions of Title 11.

3.    The Plan has been proposed in good faith and not by any means forbidden by law.

4.    The requisite number of impaired classes of claims or interests voting have voted to accept the Plan.

5.    All payments made or promised to be made by the Debtor or any other person for services or for costs and expenses in, or in connection with, the Plan, and incident to the case, have been disclosed to the Court and are reasonable or, if to be fixed after Confirmation of the Plan, will be subject to the approval of the Court.

6.    The identity, qualifications, and affiliations of the persons who are to serve the Debtor, after Confirmation of the Plan, have been fully disclosed, and the appointment of such persons to such offices, or their continuance therein, is equitable, and consistent with the interests of the creditors and equity security holders and with public policy.

7.    The identity of any insider that will be employed or retained by the Debtor and his compensation has been fully disclosed.

8.    The Plan does not affect any rate change of any regulatory commission with jurisdiction over the rights of the Debtor.

9.    The Plan is not likely to be followed by further need for reorganization.

10.    The Plan does not affect any retiree benefits.

11.    The Plan is a consensual plan.

12.    The Debtor reserves the right to object to the amount and allowance of all claims after Confirmation, except as provided for in the Plan. All such objections shall be filed within sixty (60) days of the Effective Date, as defined in the Plan.

It is accordingly,

ORDERED, ADJUDGED AND DECREED the Amended Plan of Reorganization filed on

August 15, 2022, as attached hereto as Exhibit "A" is confirmed pursuant to 11 U.S.C. § 1191(a).

### End of Order ###

Eric A. Liepins
ERIC A. LIEPINS, P.C.
12770 Coit Road
Suite 850
Dallas, Texas 75251
Ph. (972) 991-5591
Fax (972) 991-5788

PROPOSED ATTORNEYS FOR DEBTOR

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| IN RE | § | |
| | § | |
| HOLLIDAY ROAD BURGERS, LLC | § | Case no.22-70053-11 |
| | § | |
| | § | |
| | § | CHAPTER 11 |
| DEBTOR | § | |

**AMENDED  PLAN OF REORGANIZATION OF HOLLIDAY ROAD BURGERS, LLC
PURSUANT TO SECTION 1190
OF THE BANKRUPTCY CODE DATED AUGUST 15, 2022**

TO:    ALL PARTIES-IN-INTEREST, THEIR ATTORNEYS OF RECORD AND TO THE
HONORABLE UNITED STATES BANKRUPTCY JUDGE:

I
INTRODUCTION

Identity of the Debtors

Holliday Road Burgers, LLC ("Debtor") filed its voluntary Chapter 11 case in the United States Bankruptcy Court for the Northern  District of Texas, Wichita Falls Division ("Court") on April 4, 2022. The  Debtor  operates a hamburger restaurant in Wichita Falls, Texas.  The Debtor proposes to restructure its current indebtedness and continue its operations to provide a dividend to the creditors of Debtor.

## Explanation of Chapter 11

Chapter 11 is the principal reorganization chapter of the Code. There are different types of Chapter 11 designations. In this case, the Debtor has chosen to proceed under a Subchapter V- Small Business Debtor Reorganization ("Subchapter V").    Pursuant to a Subchapter V Chapter 11, a debtor is authorized to reorganize its business for its own benefit and that of its creditors and equity interest holders.  Formulation of a plan of reorganization is the principal purpose of a Chapter 11 reorganization case.  A plan of reorganization sets forth the means for satisfying claims against and interests in the debtor.  After a plan of reorganization has been filed, it must either be accepted by holders of claims against, or interests in, the debtor, or be found by the Court not to discriminate unfairly and that it is fair and equitable with respect to each class of claims or interests that is impaired under the plan that has not accepted the plan.

## Explanation of the Process of Confirmation

Acceptance of the plan by the Creditors and Equity Interest Holders is important.  In order for the plan to be accepted by each class of claims, the creditors that hold at least two thirds (2/3) in amount and more than one-half (½) in number of the allowed claims actually voting on the plan in such class must vote for the plan and the equity interest holders that hold at least two-thirds (2/3) in amount of the allowed interests actually voting on the plan in such class must vote for the plan.  As set forth above,  a Subchapter V Chapter 11  does not require that each holder of a claim against, or interest in, the debtor vote in favor of the plan in order for it to be confirmed by the Court.

Confirmation of the plan discharges the debtor from all of its pre-confirmation debts and liabilities except as expressly provided for in the plan and Section 1141(d) of the Code.  Confirmation makes the plan binding upon the debtors and all claimants, equity interest holders and other parties-in-interest, regardless of whether or not they have accepted the plan.

### Voting Procedures

**Unimpaired Class**.  Claimants in Classes 1 and 5 are not impaired under the Plan.  Such Classes are deemed to have accepted the Plan.

**Impaired Classes**.  The Class 2 through 4 Claimants are impaired as defined by Section 1124 of the Code.  The Debtor is seeking the acceptance of the Plan by Claimants in Classes 2 through 4.  Each holder of an Allowed Claim in Classes 2 through 4 may vote on the Plan by completing, dating and signing the ballot sent to each holder and filing the ballot as set forth below.

For all Classes, the ballot must be returned to Eric A. Liepins, 12770 Coit Road, Suite 850, Dallas, Texas 75251. In order to be counted, ballots must be **RECEIVED** no later than at the time and on the date stated on the ballot.

## Best Interests of Creditors Test

Section 1129(a)(7) of the Code requires that each impaired class of claims or interests accept the Plan or receive or retain under the Plan on account of such claim or interest, property of a value as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code. If Section 1111(b)(2) of the Bankruptcy Code applies to the claims of such class, each holder of a claim of such class will receive or retain under the Plan, on account of such claim, property of a value, as of the Effective Date of the Plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims. In order for the Plan to be confirmed, the Bankruptcy Court must determine that the Plan is in the best interests of the Debtor's creditors. Accordingly, the proposed Plan must provide the Debtor's creditors with at least as much as they would receive in a Chapter 7 liquidation. It is anticipated that in a Chapter 7 liquidation, the Debtor's creditors, other than the secured creditors, would receive nothing. Accordingly, since the Plan proposes a substantial dividend to all creditors, such creditors are receiving more than they would receive in a Chapter 7 liquidation. Accordingly, the Plan satisfies the requirements of Section 1129(a)(7).

## ARTICLE II
## DEFINITIONS

Unless the context otherwise requires, the following capitalized terms shall have the meanings indicated when used in this Plan which meaning shall be equally applicable to both the singular and plural forms of such terms. Any term in this Plan that is not defined herein but that is used in title 11, United States Code ("Code") shall have the meaning assigned to such term in the Code.

1.      "**Administrative Claim**" shall mean those Claims entitled to priority under the provisions of Section 507 of the Code, pursuant to a claimed and allowed administrative expense priority under Section 503(b) of the Code.

2.      "**Allowed Claim**" as to all Classes, hereinafter specified, shall mean a Claim against Debtor (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtor nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection has been determined by an order or judgment which is

no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. This category includes all Claims deemed unsecured pursuant to §506(a) of the Code. When "Allowed Claim" is used in the context of a Secured Claim, the provisions of §506(b) of the Code shall also apply.

3.     **"Allowed Secured Claim"** shall mean an Allowed Claim secured by a lien, security interest, or other encumbrance on the properties owned by the Debtor, which lien, security interest, or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby. That portion of such Claim exceeding the value of the security held therefor shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C. §506(a).

4.     **"Allowed Unsecured Claim"** shall mean an unsecured Claim against Debtor (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtor nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. This category includes all Claims deemed unsecured pursuant to §506(a) of the Code.

5.     **"Bar Date"** shall mean the date fixed by the Court as the last date for filing all Claims in this case other than Administrative and Priority Claims or Rejection Claims.

6.     **"Case"** shall mean this Chapter 11 case.

7.     **"Claim"** shall mean any right to payment from the Debtor as of the date of entry of the Order Confirming Plan whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured or can be asserted by way of set-off. Claim includes any right or cause of action based on a pre-petition monetary or non-monetary default.

8.     **"Claimant"** shall mean the holder of a Claim.

9.     **"Class"** shall refer to a category of holders of Claims or interests which are "substantially similar" as provided for in Section 1122 of the Code.

10.     **"Code"** shall mean the United States Bankruptcy Code, being title 11 of the United States Code, as enacted in 1978 and thereafter amended.

11.     **"Confirmation"** or **"Confirmation of this Plan"** shall mean entry by the Court of an Order confirming this Plan at or after a hearing pursuant to Section 1129 of the Code.

12.     **"Confirmation Date"** shall mean the date on which the Court enters an Order confirming this Plan.

13.     **"Court"** shall mean the United States Bankruptcy Court for the Northern District of Texas, Wichita Falls Division, presiding over this Chapter 11 reorganization case, or any successor court of competent jurisdiction.

14.     **"Creditor"** shall mean any person having a Claim against Debtor.

15.     **"Debt"** shall mean any obligation of Debtor, alone, and any obligation of Debtor and any other Person, to any Entity.

16.     **"Debtor"** shall mean Holliday Road Burgers, LLC.

17.     **"Disbursing Agent"** shall mean the Reorganized Debtor or in the event of a confirmation under 11 U.S.C. §1191(b) shall mean the Sub-Chapter V Trustee.

18.     **"Effective Date"** shall mean thirty days after the Final Confirmation Date.

19.     **"Entity"** shall include Person, estate trust, governmental unit and the United States Trustee.

20.     **"Equity Interest Holders"** shall mean holders of the equity interests in the Debtors.

21.     **"Final Confirmation Date"** shall mean that date which is fourteen (14) days following the entry of the Order Confirming Plan, during which period of time no Notice of Appeal is filed, or if a Notice of Appeal is filed, during which period of time no Motion for Stay Pending Appeal is granted or supersedeas bond is approved and filed.

22.     **"Order Confirming Plan"** shall mean the Order of the Court determining that this Plan meets the requirements of Chapter 11 of the Code and is entitled to confirmation under Chapter 11 of the Code.

23.     **"Petition Date"** shall mean the date on which the Debtor filed this proceeding, April 4, 2022.

24.     **"Plan"** shall mean this Plan of Reorganization in its present form or as it may be amended, modified or supplemented.

25.     **"Priority Claim"** shall mean any Claim entitled to priority pursuant to Section 507(a) of the Code except for Tax Claims and Claims incurred by the Debtor post-petition in the ordinary course of business.

26.    **"Rejection Claim"** shall mean any Claim arising out of the rejection of a lease or executory contract pursuant to Section 365 of the Code, which Claim shall be treated as an Unsecured Claim.

27.    **"Reorganized Debtor"** shall mean the entity which shall assume title to and control of the Debtors' assets and liabilities upon confirmation as provided herein.

28.    **"Secured Claim"** shall mean an Allowed Claim secured by a lien, security interest, or other encumbrance on the properties owned by the Debtor, which lien, security interest, or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby. That portion of such Claim exceeding the value of the security held therefor shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C. §506(a).

29.    **"Sub-Chapter V Trustee"** shall be that person appointed under 11 U.S.C. §1183.

30.    **"Substantial Consummation"** shall occur upon Reorganized Debtor's commencement of payments to creditors as provided in this Plan.

31.    **"Tax Claims"** shall mean any Claim entitled to priority under Section 507(a)(8) of the Code and shall include the claims of taxing authorities for taxes owed on the property retained by the Debtor under this Plan.

32.    **"Unsecured Claim"** shall mean any Allowed Claim, whether or not liquidated or contingent other than a Priority Claim, a Tax Claim, or a Secured Claim.

III
REPRESENTATIONS

**NO REPRESENTATIONS CONCERNING THE DEBTOR IS AUTHORIZED BY THE DEBTOR OTHER THAN THOSE SET FORTH IN THIS PLAN. THE DEBTOR RECOMMENDS THAT ANY REPRESENTATION OR INDUCEMENT MADE TO SECURE YOUR ACCEPTANCE OR REJECTION OF THE PLAN WHICH IS NOT CONTAINED IN THIS PLAN SHOULD NOT BE RELIED UPON BY YOU IN REACHING YOUR DECISION ON HOW TO VOTE ON THE PLAN. ANY REPRESENTATION OR INDUCEMENT MADE TO YOU NOT CONTAINED HEREIN SHOULD BE REPORTED TO THE ATTORNEYS FOR DEBTOR WHO SHALL DELIVER SUCH INFORMATION TO THE COURT FOR SUCH ACTION AS MAY BE APPROPRIATE.**

ANY BENEFITS OFFERED TO THE CREDITORS ACCORDING TO THE PLAN WHICH MAY CONSTITUTE "SECURITIES" HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE FEDERAL SECURITIES AND EXCHANGE COMMISSION ("SEC"), THE TEXAS SECURITIES BOARD, OR ANY OTHER RELEVANT GOVERNMENTAL AUTHORITY IN ANY STATE OF THE UNITED STATES. IN ADDITION, NEITHER THE SEC, NOR ANY OTHER GOVERNMENTAL AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS PLAN. ANY REPRESENTATIONS TO THE CONTRARY MAY BE A CRIMINAL OFFENSE.

THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT. FOR THE FOREGOING REASON, AS WELL AS BECAUSE OF THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES AND PROJECTIONS INTO THE FUTURE WITH ACCURACY, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS COMPLETELY ACCURATE, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE THAT SUCH INFORMATION IS ACCURATE. THE APPROVAL BY THE COURT OF THIS PLAN DOES NOT CONSTITUTE AN ENDORSEMENT BY THE COURT OF THE PLAN OR GUARANTEE THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.

THE DEBTOR BELIEVES THAT THE PLAN WILL PROVIDE CLAIMANTS WITH AN OPPORTUNITY ULTIMATELY TO RECEIVE MORE THAN THEY WOULD RECEIVE IN A LIQUIDATION OF THE DEBTOR'S ASSETS, AND SHOULD BE ACCEPTED. CONSEQUENTLY, THE DEBTOR URGES THAT CLAIMANTS VOTE FOR THE PLAN.

DEBTOR DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS CORRECT, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE. THE STATEMENTS CONTAINED IN THIS PLAN ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN.

## ARTICLE IV

### FINANCIAL PICTURE OF THE DEBTOR

Gene's Tasty Burger has been a staple in Wichita Falls since 1959. In 2009, Diane Clay purchased the operation under her company Holliday Road Burgers, LLC ("Debtor"). Over the years as a result of substantial growth in other parts of the city and increased the restaurant has become less popular. The Debtor borrowed money from First Bank over the years, when the business slowed the Debtor was unable to keep up with payments. The Debtor was sued by First Bank who obtained a judgment against the Debtor and was attempting to foreclose on the Debtor's assets. This bankruptcy was filed allow the Debtor an opportunity to reorganize and keep it business operations.

### Future Income and Expenses Under the Plan

The Debtor filed this case on April 4, 2022 and has continued to operate the restaurant. Post petition the Debtor has corrected some license and permit issues and it currently fully operations and in compliance with all operational requirements. The Debtor has maintained operations post petition but has struggled with labor issues. The Debtor has entered into an Agreed Order with First Bank and is currently providing adequate protection payments in the amount of $900 per month. The Debtor is current on those payments. Attached hereto as Exhibit "A" are projections of gross income, expenses and operating income for the next year. It is anticipated that after confirmation, the Debtor will continue in business. Based upon the projections, the Debtor believes it can service the debt to the creditors.

### Post-Confirmation Management

The Debtor is currently owned 100% by Diane Clay. Mrs Clay will not draw a salary from the company post petition. Mrs. Clay will remain the 100% owner of the company going forward.

### ARTICLE V.

### ANALYSIS AND VALUATION OF PROPERTY

The Debtor operates a restaurant therefore the Debtor's assets are limited to money in the bank, real property where the restaurant is located, the inventory in the restaurant and the equipment and fixture in the restaurant. The value of the Debtor's assets, if liquidated, would not provide a greater dividend to the unsecured creditors than proposed under this Plan.

A liquidation analysis of the Debtor's assets is attached hereto as **Exhibit "B".**

### ARTICLE VI
### SUMMARY OF PLAN OF REORGANIZATION

The Debtor will continue in business. The Debtor's Plan will break the existing claims into 5 categories of Claimants. These claimants will receive cash payments over a period of time beginning on the Effective Date.

**Satisfaction of Claims and Debts**: The treatment of and consideration to be received by holders of Allowed Claims or interests pursuant to this Article VI of this Plan shall be the sole an exclusive means for full settlement, release and discharge of their respective Claims, Debts, or interests. On the Confirmation Date, the Reorganized Debtor shall assume all duties, responsibilities and obligations for the implementation of this Plan. Any class of Claimants failing to vote on this

Plan shall be deemed to have accepted this Plan in its present form or as modified or amended as permitted herein.

**Class 1 Claimants (Allowed Administrative Claims of Professionals and Subchapter V Trustee)** are unimpaired and will be paid in cash and in full on the Effective Date of this Plan. Professional fees are subject to approval by the Court as reasonable. Debtor's attorney's fees approved by the Court and payable to the law firm of Eric Liepins, P.C. will be paid immediately following the later of Confirmation or approval by the Court out of the available cash. The Subchapter V Trustee fees will be paid immediately following the later of Confirmation or approval by the Court out of the available cash. The Debtor's case will not be closed until all allowed Administrative Claims are paid in full. Class 1 Creditor Allowed Claims are estimated as of the date of the filing of this Plan to not exceed the amount of $15,000.

The Class 1 Claimants are not impaired under this Plan.

**Class 2 Claimants (Allowed Priority Tax Creditor Claims)** are impaired and shall be satisfied as follows: Wichita County[1] has filed a Proof of Claims covering tax years 2019, 20920, 2021 and 2022 for both real and business property taxes in the total amount of $12,971.03[2] ("Ad Valorem Tax Claims"). The Allowed Ad Valorem Tax Creditor Claims on shall be paid in full in 54 equal monthly payments commencing on the Effective Date. The Ad Valorem Taxes will receive post-petition pre-Effective Date interest at the state statutory rate of 12% per annum and post-Effective Date interest at the rate of 12% per annum. The Taxing Authorities shall retain their statutory senior lien position regardless of other Plan provisions, if any, to secure their Ad Valorem Tax Claims until paid in full as called for by this Plan.

Class 2 creditors are impaired under this Plan.

**Class 3 (Allowed Secured Claim of First Bank)** is impaired and shall be satisfied as follows:

1.      **Impaired.** First Bank's claim is impaired.

2.      **Bank's Collateral.** On or about January 9, 2022 First Bank obtained a Judgment against Debtor in a case styled *First Bank v. Holliday Road Burgers LLC and Richard R. Clay* case number DC78-CV2020-1003 in the 78th District Court, Wichita County, Texas in the amount of $443,925.44 ("Judgment"). The Judgment provided for a Judicial Foreclosure on all of Debtor's real

---

[1]The Wichita County Proof fo claim includes the tax claims of the City of Wichita Falls, Wichita Falls Independent School District and Wichita County.

[2]Debtor would show this number will be reduced as a result of a agreed reduction in the value of the personal property for t ax year 2022.

and personal property.  As set forth in the Judgment, the Bank's collateral consists of (the "Bank's Collateral"):

**Real Property (including any improvements):** Lots Number Nineteen (19) and Twenty (20) of the Dr. E. B. Bailey Subdivision of 4 acres being Blocks 9, 10, 11 and 12 of the Dr. R. L. Miller Subdivision out of the Southeast corner of the Thos. H. Garner Survey, Abstract 84, an Addition to the City of Wichita Falls, Wichita County, Texas, according to Plat of record in Volume 2, Page 155, Wichita County Plat Records.

**Personal Property:**

A.      **Inventory.** All inventory of Defendant Holliday Road Burgers, LLC held for ultimate sale or lease, or which has been or will be supplied under contracts of service, or which are raw materials, work in process, or materials used or consumed in its business.

B.      **Accounts and Other Rights to Payment.** All rights Defendant Holliday Road Burgers, LLC has now or in the future to payments including, but not limited to, payment for property or services sold, leased, rented, licensed, or assigned, whether or not earned such payment by performance. This includes any rights and interests including all liens and security interests which Defendant Holliday Road Burgers, LLC may have by law or agreement against any account debtor or obligor.

C.      **General Intangibles.** All general intangibles of Defendant Holliday Road Burgers, LLC including, but not limited to, tax refunds, applications for patents, patents, copyrights, trademarks, trade secrets, good will, trade names, customer lists, permits and franchises, payment intangibles, computer programs and all supporting information provided in connection with a transaction relating to computer programs, and the right to use its name, including but not limited to the exclusive right to use the trade name of "Gene's Tasty Burger."

D.      **Equipment.** All equipment of Defendant Holliday Road Burgers, LLC including, but not limited to, all machinery, vehicles, furniture, fixtures, manufacturing equipment, farm machinery and equipment, shop equipment, office and recordkeeping equipment, and parts and tools. All equipment described in a list or schedule which Defendant Holliday Road Burgers, LLC gave to Plaintiff First Bank is included in the Property.

3.      **Secured Claim.** First Bank's secured claim is allowed in the amount of $112,500.00.

4.      **Treatment of Secured Claim.** First Bank's secured claim shall be paid in full with interest at six percent (6%) per annum with interest accruing beginning on September 1, 2022 and

continuing until paid in full.  The payments, as set forth in section 5 below, shall be based upon a ten year amortization with monthly installments and a five year balloon payment.

5.      **Payment Provision.** First Bank's secured claim, principal and interest, shall be paid in equal monthly installments of ONE THOUSAND TWO HUNDRED FORTY-TWO AND 77/100 DOLLARS ($1,242.77) beginning September 1, 2022, and thereafter on the 1st day of each succeeding month through July 1, 2027, and in one final installment on August 1, 2027 in the amount of the unpaid principal and accrued, unpaid interest as of that date.  Payments will be applied first to accrued interest and the remainder to reduction of principal.

6.      **Survival of Lien.** Notwithstanding anything in this Plan to the contrary, the lien of First Bank shall survive entry of the order of confirmation and any discharge of the Debtor by the Court.  Neither the confirmation order nor any discharge shall impair or modify First Bank's rights in the Bank's Collateral.

7.      **Deed of Trust.** To allow First Bank the option of a nonjudicial foreclosure, the Debtor shall execute and deliver to First Bank a standard State Bar of Texas deed of trust securing payment of the Judgment within 21 days of confirmation.  First Bank, in its sole and absolute discretion, may exercise its right of judicial foreclosure under the Judgment or a nonjudicial foreclosure under the Deed of Trust.  In the event First Bank elects nonjudicial foreclosure, the proceeds from the foreclosure shall be applied to the outstanding balance of the Judgment and shall not be limited to the secured claim of First Bank.

8.      **Insurance Requirement.** Debtor, at all times until First Bank's secured claim is paid in full, shall maintain property insurance on the Bank's Collateral in an amount of not less than $112,500.00.  Upon request and within seven (7) days of request, Debtor shall provide proof of property insurance coverage on the Collateral by providing a true, correct, and complete copy of: (i) the insurance declaration page; (ii) the complete policy and all endorsements including the application; and (iii) proof that the Bank Collateral is named as additional insured or loss payee on the property insurance coverage.

9.      **Future Ad Valorem Taxes.** The Debtor shall pay future ad valorem property taxes prior to the taxes becoming delinquent.

10.     **Future Operations.** All post-confirmation operations of the restaurant of Debtor known as Gene's Tasty Burger shall be by the Debtor and in the name of Debtor.  Debtor shall fully and strictly comply with the following requirements at all times until the full payment of First Bank's secured claim:

a.      Within fourteen days of confirmation, Debtor shall obtain and file in the Official Public Records of Wichita County a Statement of Abandonment of Use of a Business or Professional Name duly executed by Richard Laurence Clay abandoning and terminating the Assumed Name Records Certificate of Ownership for Unincorporated Business or Profession filed as Document Number 202121082, Official Public Records of Wichita County, Texas. Failure to strictly and timely comply with this provision constitutes an immediate Event of Default which allows and authorizes

<u>First Bank to immediately proceed to foreclosure without complying with the requirements of
sections 11-13 below.</u>

  b.  Within twenty-one days of confirmation, Debtor shall file an assumed name
certificate in the Official Public Records of Wichita County claiming the assumed name of Gene's
Tasty Burgers.

  c.  Debtor shall maintain all real property and business personal property taxes for the
assets used in the operations of its restaurant in the name of Holliday Road Burgers, LLC.

  d.  Debtor shall maintain all sales tax accounts for the operation of its restaurant in the
name of Holliday Road Burgers, LLC and shall pay all sales tax before delinquent.

  e.  Debtor shall maintain all accounts for employers with the State of Texas or the Texas
Workforce Commission in the name of Holliday Road Burgers, LLC and shall pay all Texas
employer related taxes before delinquent.

  f.  Debtor shall maintain all accounts for federal employment taxes in the name of
Holliday Road Burgers, LLC and shall pay all federal employer related taxes before delinquent.

  g.  Debtor shall not grant any lien, or permit any lien to be filed, against its assets.

  11.  **Default.** The following constitute an Event of Default:

  a.  failure to fully and timely pay a plan payment to First Bank on its secured claim under
sections 3, 4, and 5 above; or

  b.  failure to fully and timely pay a plan payment for Class 2 Claimants for property
taxes; or

  c.  failure to fully and timely pay a plan payment for Class 4 Claimants for allowed
unsecured claims; or

  d.  failure to fully comply with the requirements of sections 8, 9, and 10 above; or

  e.  ceasing operations of the restaurant known as Gene's Tasty Burger for more than ten
(10) continuous days.

  12.  **Procedure Default.** Upon the occurrence of an Event of Default, First Bank may
issue a notice of default to Debtor specifying the default. The notice of default shall be sent by
certified mail, return receipt requested to:

    Holliday Road Burgers, LLC    Holliday Road Burgers, LLC
    #5 Hickory Downs        2310 Holliday
    Wichita Falls, Texas 76308    Wichita Falls, Texas 76301

Notice shall be effective on deposit into the mail. To timely cure a default for payment due First
Bank, Debtor must pay and First Bank must receive full payment by cashier's check of the amount
in default, plus an administrative fee for the expenses associated with issuing the notice of default
in the amount of $150.00, within 14 days of the mailing of the notice of default. To cure a payment
default for a payment due a party other than First Bank, Debtor must pay the full amount in default
and deliver to First Bank proof of payment, plus an administrative fee for the expenses associated

with issuing the notice of default in the amount of $150.00, within 14 days of the mailing of the notice of default. To cure a non-payment default under sections 8-10 above, Debtor must provide proof of completely curing the default, plus an administrative fee for the expenses associated with issuing the notice of default in the amount of $150.00, within 14 days of the mailing of the notice of default.

13.    **Failure to Cure Default.** In the event Debtor does not timely cure a default in accordance with section 12 above, First Bank may issue a notice of failure to cure default which shall be sent to Debtor using the same mailing procedure set forth in section 12. Upon issuance of the notice of failure to cure default, First Bank shall have the immediate right to judicial or nonjudicial foreclosure of its liens on the Bank's Collateral.

14.    **Automatic Stay.** The automatic stay and the discharge injunction shall not apply to the rights of First Bank under the plan upon the order for confirmation becoming final and non-appealable.

15.    **Unsecured Claim.** First Bank's allowed unsecured claim in the amount of $347,625 shall be paid its proportionate share of the unsecured creditor's pool for Class 4 claimants.

The Class 3 Claim is impaired under this Plan

**Class 4 Claimants (Allowed Unsecured Claims)** are impaired and shall be satisfied as follows: All unsecured creditors shall share pro rata in the unsecured creditors pool. The Debtor shall make monthly payments commencing thirty (30) days after the Effective Date of $500 into the unsecured creditors' pool. The amount represents the Debtor's disposable income as that terms is defined in 11 U.S.C. § 1191(d). The Debtor shall make distributions to the Class 4 creditors every 90 days commencing 90 days after the first payment into the unsecured creditors pool. The Debtor shall make 60 payments into the unsecured creditors pool. Based upon the Debtor's schedules and  the timely filed Proof of Claim the Class 4 creditors will receive 15% of their Allowed Claims under this Plan. The Debtor may prepay any Class 4 creditor without penalty.

The Class 4 creditors are impaired.

**Class 5 ( Current Owners)** are not impaired under the Plan and shall be satisfied as follows: The current owner will receive no payments under the Plan, however, she will be allowed to retain her ownership in the Debtor.

Class 5 Claimants are not impaired under the Plan.

# ARTICLE VII
## MECHANICS/IMPLEMENTATION OF PLAN

Debtor anticipates the continued operations of the business to fund the Plan.

## ARTICLE VIII.
## FEASIBILITY OF PLAN

The projections of the future business operations are attached hereto as Exhibit "A". The Debtor believes that the projections are accurate based upon the historical operations of the business. Based upon the projections, the Debtor believes the Plan to be feasible.

## ARTICLE IX
## RETENTION OF JURISDICTION

The Bankruptcy Court's jurisdiction to enforce or interpret this Plan shall be retained under the Plan.

## ARTICLE X.
## ALTERNATIVES TO DEBTOR'S PLAN

If the Debtor's Plan is not confirmed, the Debtor's bankruptcy case may be converted to a case under Chapter 7 of the Code, in which case a trustee would be appointed to liquidate the assets of the Debtor for distribution to its Creditors in accordance with the priorities of the Code. Generally, a liquidation or forced sale yields a substantially lower amount. In Debtor case the assets have a value of $75,000. At a forced sale the Debtor believes the actual amount received would be less. The amount owed to the secured and tax creditors is $475,000, therefore, a liquidation would not result in a distribution to the unsecured creditors.

A liquidation analysis is attached hereto as Exhibit "B".

## ARTICLE XI
## STATUS OF EXECUTORY CONTRACTS AND LEASES

All unexpired leases and executory contracts shall be assumed on or before the Effective Date. To the extent there are any unexpired leases or executory contracts, which have not been assumed or dealt with in this Plan or Court Order prior to the Effective Date, they are rejected.

## ARTICLE XII
## EVENTS OF DEFAULT AND EFFECT THEREOF

Unless expressly provided herein to the contrary, no Claimant shall have the right to enforce any rights under this Plan until the Reorganized Debtor fails to cure any default hereunder within fifteen (15) days of receipt of written notice of such default to Reorganized Debtor at Richard Clay at atmr12@sbcglobal.net.  The Debtor will be entitled to no more than two (2) notice of default during the term of the Plan from any creditor. Upon a third default to that creditor, the automatic stay as to that creditor shall be automatically terminated.

## ARTICLE XIII
## DISCHARGE

Upon Confirmation pursuant to 11 U.S.C. §1191(a)  to the extent that a Claim or Debt has been dealt with under this Plan, such Claim or Debt will be discharged. Upon confirmation pursuant to 11 U.S.C. § 1191(b) discharge shall occur upon completion of all payments required under this Plan.

The automatic stay imposed by Section 362 of the Code or any preliminary injunction granted by the Court to allow for Substantial Consummation of this Plan shall remain in effect until the Effective Date.

## ARTICLE XIV
## RISKS TO CREDITORS UNDER THE DEBTOR'S PLAN

Claimants and Equity Interest Holders should be aware that there are a number of substantial risks involved in consummation of the Plan.  The Plan contemplates that there will be excess funds to pay Creditor Claims.

## ARTICLE XVI
## TAX CONSEQUENCES TO THE DEBTOR

Implementation of the Plan may result in federal income tax consequences to holders of Claims, Equity Interest Holders, and to the Debtor. In this case most of the creditors will not be paid in full the amount of their claims.  Tax consequences to a particular Creditor or Equity Interest Holder may depend on the particular circumstances or facts regarding the Claim of the Creditor or the interests of the Equity Interest Holder.  **CLAIMANTS ARE URGED TO CONSULT THEIR OWN TAX ADVISOR AS TO THE CONSEQUENCES OF THE PLAN TO THEM UNDER FEDERAL AND APPLICABLE STATE AND LOCAL TAX LAWS.**

## ARTICLE XVII

DEBTOR'S AMENDED PLAN OF REORGANIZATION PURSUANT TO SECTION 1190 OF THE BANKRUPTCY CODE DATED AUGUST 15, 2022 - Page 15

## PENDING OR ANTICIPATED LITIGATION

The Debtor has evaluated potential claims which may be brought. The Debtor is unaware of any litigation which could be brought for the benefit of the creditors of the estate.

Dated: August 15, 2022.

Respectfully submitted,

Holliday Road Burgers, LLC

  /s/ Diane Clay
By: Diane Clay
Its: Managing Member

EXHIBIT 'B'

LIQUIDATION ANALYSIS

|  | CHAPTER 7 | CHAPTER 11 |
|---|---|---|
| ASSETS |  |  |
| Cash | 1,000 | 1,000 |
| Equipment | 5,000[3] | 10,000 |
| Real Property | 42,000[4] | 60,000 |
| LIABILITIES |  |  |
| ADMINISTRATIVE | 15,000 | 15,000 |
| TAXES | 12,000 | 12,000 |
| FIRST BANK | 460,000 | 75,000 |
| UNSECURED CREDITORS | 5,000 | 375,000 |
| DISTRIBUTION TO UNSECURED | 0% | 15% |

---

[3]Debtor values the equipment in the location at 50% of its current appraised value if liquidated to account for removal, sales costs and a forced sale.

[4]Debtor values the real property at 70% of its current appraised value to account for a forced sale.

PROJECTIONS FOR HOLLIDAY RAOD BURGERS, LLC

| | AUG | SEP | OCT | NOV | DEC | JAN | FEB | MAR | APL | MAY | JUN | JLY | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| INCOME | 18,500 | 17,000 | 19000 | 18000 | 17000 | 15500 | 14500 | 19000 | 17000 | 17000 | 17500 | 19000 | 209,000 |
| **Expenses** | | | | | | | | | | | | | |
| labor | 7200 | 7200 | 7200 | 7200 | 7200 | 6500 | 6000 | 7200 | 7200 | 7200 | 7200 | 7200 | 84500 |
| COG | 5550 | 4800 | 5700 | 6000 | 5100 | 4650 | 4350 | 5700 | 5100 | 4800 | 5250 | 6000 | 63000 |
| insurance | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 2400 |
| taxes | 1100 | 1100 | 1100 | 1100 | 1100 | 1100 | 1100 | 1100 | 1100 | 1100 | 1100 | 100 | 12200 |
| supplies | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 9300 |
| utilities | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 9600 |
| fuel | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 2400 |
| | 15500 | 14750 | 19550 | 15950 | 15050 | 13900 | 13100 | 15650 | 15050 | 14750 | 15200 | 14950 | 183400 |
| **plan payments** | | | | | | | | | | | | | |
| Taxes | 370 | 370 | 370 | 370 | 370 | 370 | 370 | 370 | 370 | 370 | 370 | 370 | 4440 |
| First | 1242 | 1242 | 1242 | 1242 | 1242 | 1242 | 1242 | 1242 | 1242 | 1242 | 1242 | 1242 | 14904 |
| Unsecured | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 |
| | 2112 | 2112 | 2112 | 2112 | 2112 | 2112 | 2112 | 2112 | 2112 | 2112 | 2112 | 2112 | 25344 |